MAYNARD, Appellant,

v.

H.A.M. LANDSCAPING, INC. et al., Appellees.

[Cite as *Maynard v. H.A.M. Landscaping, Inc.,* 166 Ohio App.3d 76, 2006-Ohio-1724.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 86191.

Decided April 6, 2006.

78

Paul W. Flowers Co., L.P.A., Paul W. Flowers, and Bashein & Bashein, W. Craig Bashein, for appellant.

Robert B. Sutherland, for appellees.

---

JOYCE J. GEORGE, Judge.

{¶ 1} Plaintiff, Jason Maynard, appeals from the order of the trial court

granting summary judgment to his employer, defendant[1] H.A.M. Landscaping, Inc., in his action for negligence and intentional tort in the workplace. For the reasons set forth below, we affirm.

{¶ 2} Plaintiff recently was diagnosed with type I diabetes and requires regular insulin injections in connection with his meals. On his second day of work for the employer, plaintiff was assigned to work with Michael Russe and Foreman David Fiotti. At noon, plaintiff ate lunch and administered his insulin injection, then returned to work approximately ten minutes later. The workers completed the job at around 2:30 p.m. Upon leaving the work site, Fiotti decided that they should go to Wendy's for lunch, and he instructed Russe to drive the employer's truck to that location. Plaintiff indicated that he did not feel well and asked to sit near a window. When the three arrived at Wendy's, Fiotti asked plaintiff what he wanted to eat, but plaintiff did not answer.

{¶ 3} Fiotti and Russe left plaintiff alone in the truck and ate their lunch in the restaurant. Upon their return, they observed plaintiff on his back, leaning toward the passenger side of the truck with his feet toward the steering wheel. His arms were outstretched, and he was "blowing out of his mouth." Russe opened the door on the driver's side, Fiotti opened the door on the passenger's side, and they asked plaintiff if he was okay. When plaintiff failed to respond, the men called their office and then called 9–1–1. At that point, plaintiff suddenly placed his feet on the floor of the truck cab, turned sideways, and fell out of the truck through the open passenger door, injuring his head and shoulder.

{¶ 4} Plaintiff sought workers' compensation benefits for these injuries. His claim was denied because the "employee [plaintiff] did not sustain an injury in the course of and arising out of employment[;] employee was not engaged in activities for the benefit of the employer." Following the denial of his claim, plaintiff initiated an appeal to the court of common pleas, designated case No. 470242, which is still pending.

{¶ 5} On October 10, 2003, plaintiff filed the instant action against his employer and the employer's automobile insurance carrier. Plaintiff alleged negligence, workplace intentional tort, and entitlement to uninsured-motorists coverage.

{¶ 6} The employer denied liability and moved for summary judgment. The employer reasoned that it was in compliance with R.C. 4123.74 and is therefore

---

1. Although H.A.M.'s automobile insurance provider was also named as a defendant, the ruling as to H.A.M. renders the action moot as to the insurer, because plaintiff is not legally entitled to collect or recover under their uninsured-motorist coverage where the alleged tortfeasors were entitled to immunity under the workers' compensation laws. *Nova v. State Farm Mut. Auto. Ins. Co.*, Summit App. No. 21885, 2004-Ohio-3419, 2004 WL 1465643. Accordingly, this claim is moot and does not render the trial court decision interlocutory. *Wise v. Gursky* (1981), 66 Ohio St.2d 241, 20 O.O.3d 233, 421 N.E.2d 150.

immune from liability for negligence. Further, the employer argued that plaintiff could not establish the requirements of an intentional-tort claim.

{¶ 7} In opposition, plaintiff pointed out that in case No. 470242, the employer denied that plaintiff was in the course and scope of his employment at the time of his fall. Plaintiff argued that it is unfair to permit the employer to invoke workers' compensation immunity for injuries that it claims were outside the workers' compensation statute. Additionally, plaintiff argued that he was diabetic, needed to eat at certain times of the day, and needed to take insulin at noon. He complained that he was given only an abbreviated lunch break at noon. By 2:30 p.m., plaintiff felt ill. While Fiotti and Russe were in the restaurant, plaintiff became unresponsive. He asserted that he fell from the vehicle after Fiotti and Russe returned to the vehicle and left the doors open. In addition, plaintiff presented an affidavit from his physician stating that the seizure was a direct result of performing strenuous physical work in a warm environment.

{¶ 8} The trial court granted the employer's motion for summary judgment. Plaintiff now appeals and assigns two errors for our review.

{¶ 9} Plaintiff's first assignment of error states:

The trial judge erred, as a matter of law, by granting summary judgment without mentioning or properly resolving plaintiff-appellant's negligence claim.

{¶ 10} Within this assignment of error, plaintiff asserts that statutory immunity should not be available to the employer because the employer insists in case No. 470242 that plaintiff was not in the course and scope of his employment at the time he sustained his injuries. Plaintiff claims that it is unfair and logically inconsistent to allow the workers' compensation claim to be denied for failure to meet the "course and scope of employment" requirement, while at the same time invoking immunity for the employer because the employee was in the course and scope of employment.

{¶ 11} With regard to the procedural law, we note that appellate review of the granting of summary judgments is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241; *Zemcik v. La Pine Truck Sales & Equip.* (1998), 124 Ohio App.3d 581, 585, 706 N.E.2d 860. In *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, the Ohio Supreme Court defined the appropriate test as follows:

Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the

syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273–274.

Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–59, 604 N.E.2d 138.

{¶ 12} With regard to the substantive law, we note, as an initial matter, that the Workers' Compensation Act operates as a balance of mutual compromise between the interests of the employer and the employee, whereby employees relinquish their common-law remedy and accept lower benefit levels coupled with the greater assurance of recovery, and employers give up their common-law defenses and are protected from liability for negligence. *Blankenship v. Cincinnati Milacron Chems., Inc.* (1982), 69 Ohio St.2d 608, 614, 23 O.O.3d 504, 433 N.E.2d 572, 577.

{¶ 13} Shortly after the Workers' Compensation Act was adopted, the Supreme Court of Ohio linked employer immunity to compensability. See *Triff v. Natl. Bronze & Aluminum Foundry Co.* (1939), 135 Ohio St. 191, 14 O.O. 48, 20 N.E.2d 232, paragraph two of the syllabus. In *Triff*, the court held that employers were not entitled to immunity from negligence actions when the injuries at issue were not compensable under the workers' compensation fund. The court stated:

The right of action of an employee for the negligence of his employer directly resulting in a non-compensable occupational disease has not been taken away by Section 35, Article II of the Constitution of Ohio, or by Section 1465–70, General Code. (*Zajachuck v. Willard Storage Battery Co.*, 106 Ohio St. 538 [140 N.E. 405] and *Mabley & Carew Co. v. Lee*, 129 Ohio St. 69 [1 O.O. 366, 193 N.E. 745], overruled.)

{¶ 14} On May 25, 1939, following the court's decision in *Triff*, however, the legislature amended G.C. 1465–70 by emergency measure to provide:

Employers who comply with the provisions of Section 1465–69 shall not be liable to respond in damages at common law or by statute, for any injury, disease or bodily condition, *whether such injury, disease or bodily condition is compensable under this act or not,* or for any death resulting from such injury, disease or bodily condition, of any employee, wherever occurring, during the period covered by such premium so paid into the state insurance fund, or during the interval of time in which such employer is permitted to pay such

compensation direct to his injured or the dependents of his killed employees as herein provided.

No action against an employer, who has complied with the provisions of Section 1465–69, to recover damages at common law or by statute for any injury, disease or bodily condition, or death resulting from an injury, disease or bodily condition, of an employee arising out of his employment by such employer shall be commenced after 180 days after the effective date of this act.

(Emphasis added.) See *Bevis v. Armco Steel Corp.* (1951), 156 Ohio St. 295, 46 O.O. 172, 102 N.E.2d 444 (outlining the history of G.C. 1465–70).

{¶ 15} Similar language is found in R.C. 4123.74, which provides:

Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, *whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter.*

(Emphasis added.)

{¶ 16} Pursuant to R.C. 4123.35(A), an employer must pay workers' compensation premiums into the state insurance fund.

{¶ 17} Cases construing R.C. 4123.74 have held that this statute provides to employers immunity from liability to employees so long as the employer was in full compliance with the workers' compensation statutes at the time of the accident. *Catalano v. Lorain,* 161 Ohio App.3d 841, 2005-Ohio-3298, 832 N.E.2d 134; *Jones v. Multi–Color Corp.* (1995), 108 Ohio App.3d 388, 670 N.E.2d 1051. This statute operates to provide complying employers with immunity whether or not the injury, disease, or bodily condition is compensable under this act. See *Moses v. Budd Co.* (Dec. 3, 1993), Wood App. No. 92WD041, 1993 WL 496639 ("An employer is immune from civil damages when the employee's injuries arise out of his employment even where the injury is not compensable").

■ {¶ 18} Accordingly, once the Industrial Commission has certified that an employer has established industrial coverage as to that employee and has paid its premium, pursuant to R.C. 4123.35, the employer is a complying employer as a matter of law and is entitled to statutory immunity. *Bridges v. Natl. Eng. & Contracting Co.* (1990), 49 Ohio St.3d 108, 551 N.E.2d 163; *Fuhrman v. Garrison Feist Constr. Co.* (December 15, 2000), Hamilton App. Nos. C–000063 and C–000080, 2000 WL 1838031.

{¶ 19} We recognize that the phrase "received or contracted by any employee in the course of or arising out of his employment" in R.C. 4123.74 appears to limit immunity only to claims that are compensable within the workers' compensation system. However, immunity is afforded when the injury is "received or contracted by any employee in the course of or arising out of his employment." R.C. 4123.74.

{¶ 20} The requirements for immunity are set forth in the disjunctive. Accordingly, a complying employer has immunity when either aspect of the statute is satisfied. Cf. *Estate of Raymond v. Goodyear Tire & Rubber Co.* (Aug. 23, 2000), Summit App. No. 19701, 2000 WL 1197020; *State v. Solomon* (1991), 59 Ohio St.3d 124, 126, 570 N.E.2d 1118. Employer immunity is therefore provided when the injury occurs "in the course of" employment or when the injury "arises out of" employment.

■ {¶ 21} In this regard, employer immunity is distinguishable from coemployee immunity, because a party who is injured as a result of a coemployee's negligent acts is precluded from pursuing any additional common-law or statutory remedy against that coemployee if the injury is found to be compensable. See *Kaiser v. Strall* (1983), 5 Ohio St.3d 91 at 94, 5 OBR 143, 449 N.E.2d 1; R.C. 4123.741.

■ {¶ 22} Compensation requires that the injury is both "received *in the course of, and arising out of,* the injured employee's employment." (Emphasis added.) R.C. 4123.01(C). The requirements for compensation are conjunctive; all elements of "in the course of and arising out of" the employment must be met before compensation will be allowed. *Fisher v. Mayfield* (1990), 49 Ohio St.3d 275, 551 N.E.2d 1271. The "in the course of" requirement addresses the time, place, and circumstances of the injury, and the "arising out of" requirement addresses the causal connection between the injury and the injured person's employment. Id. Thus, not all injuries having an association with the workplace are compensable. *Kaplan v. Mayfield* (July 8, 1987), Jefferson App. No. 86–J–25, 1987 WL 14030.

{¶ 23} In *Kaplan,* the court ruled that when the plaintiff had heart disease and experienced angina at work, which rendered him unconscious, he was not entitled to participate in the workers' compensation fund. Accord *Ray v. Formitex Plastic Fabrications* (May 11, 1976), Franklin App. No. 76AP–3, 1976 WL 189657 (injury sustained as the result of a brawl at work is not compensable); R.C. 4123.01(C)(2) (injury or disability caused primarily by the natural deterioration of the body is not compensable).

{¶ 24} Applying the foregoing, the trial court properly considered the issue of employer immunity with regard to the law as set forth in R.C. 4123.74 and was

not required to consider the issue of immunity with reference to the compensability of the claim. Further, the trial court properly held that as an employer in compliance with R.C. 4123.35, H.A.M. Landscaping was entitled to immunity under R.C. 4123.74. Immunity is not defeated by the denial of compensation in this instance.

{¶ 25} This assignment of error is without merit.

{¶ 26} Plaintiff's second assignment of error states:

The trial judge erred, as a matter of law, by finding that summary judgment was appropriate upon plaintiff-appellant's workplace intentional tort claim.

{¶ 27} In *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, the court held that all intentional torts by employers, even those causing physical injuries covered by workers' compensation, are outside the employment relationship for purposes of preemption. Such conduct is considered as occurring outside the scope of the employment and, necessarily, beyond the bounds of the workers' compensation act. *Blankenship v. Cincinnati Milacron Chems., Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572.

{¶ 28} In order to maintain an action for an intentional tort against an employer, an employee must demonstrate (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employer to that dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under these circumstances, and with that knowledge, did act to require the employee to continue to perform the dangerous task. *Fyffe v. Jeno's Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.

{¶ 29} With regard to the proof required for intentional-tort claims, *Fyffe* further stated at paragraph two of the syllabus:

To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent.

{¶ 30} However, the fact that the employer might or should have known that if it required the employee to work under dangerous conditions, then the employee would certainly be injured is not enough to establish a case for intentional tort. *Caldwell v. Petersburg Stone Co.*, Mahoning App. No. 02CA8, 2003-Ohio-3275, 2003 WL 21443746. Rather, the determination turns on whether the plaintiff alleges facts showing that the employer possessed actual or constructive knowledge of the dangerous situation. Id.

{¶ 31} In this matter, the record indicates that plaintiff was given an abbreviated lunch break at noon. At this time, he ate lunch and administered his insulin injection. He left with his foreman and another employee. He explained that he felt ill and needed to sit near the window while Russe drove. When they arrived at the restaurant, Russe and Fiotti asked what plaintiff wanted, but he did not respond. Fiotti and Russe ate in the restaurant. When they returned, they observed plaintiff stretched out. They opened the doors of the truck. Plaintiff fell out of the truck and was injured. They called for help.

{¶ 32} From the foregoing, there is no evidence of the existence of a dangerous process, procedure, or condition within the employer's business operation, and there is no evidence that plaintiff was subjected by his employment to a dangerous process, procedure, instrumentality, or condition.

{¶ 33} Further, there is no evidence that defendant knew that if plaintiff was subjected by his employment to the dangerous process, procedure, or condition, then harm to the employee would be a substantial certainty. Plaintiff contends that his coemployees should have known by watching him that he was having a diabetic seizure and should have known that he would sustain injuries. Such evidence does not rise to the level of "actual knowledge" necessary to find the employer's conduct intentional as defined by *Fyffe*, 59 Ohio St.3d 115, 570 N.E.2d 1108. See *Maracz v. UPS*, Cuyahoga App. No. 83432, 2004-Ohio-6851, 2004 WL 2914994.

{¶ 34} Finally, there is no evidence that defendant required plaintiff to perform any dangerous tasks. In short, the conduct may be considered negligent or even reckless, but not intentional. See *Raines v. Rubbermaid, Inc.* (1996), 112 Ohio App.3d at 391, 678 N.E.2d 988. The trial court correctly determined that construing the evidence in a light most favorable to plaintiff, reasonable minds could only conclude that the elements needed to establish the requirements for an intentional workplace tort were not established.

{¶ 35} The second assignment of error is without merit.

{¶ 36} The judgment of the trial court is affirmed.

Judgment affirmed.

CELEBREZZE, P.J., concurs.

KARPINSKI, J., concurs in judgment only.

KARPINSKI, Judge, concurring in judgment only.

{¶ 37} I respectfully concur in judgment only for the reasons that follow.

A. Negligence Claim

{¶ 38} One of the underlying questions here is whether plaintiff's injuries occurred "in the course of" *or* "ar[ose] out of" employment.[2] The majority opinion observes that for a workers' compensation claim to be compensable, both of these criteria must be met, but that only one of these two requirements need be satisfied in order for an employer to receive statutory immunity against a negligence claim. The majority opinion, however, never clarifies which of these conditions was satisfied.[3] Because this court has ruled that the employer is immune on this matter, the court should specify that the necessary conditions were met and how.

Standard to Determine Immunity

{¶ 39} Instead of ruling on the criteria it specifies, the majority opinion appears to move to a different standard for determining the employer's immunity: compliance. Specifically, the majority holds that "[c]ases construing R.C. 4123.74 have held this statute provides immunity to employers from liability to employees so long as the employer was in full compliance with the workers' compensation statutes at the time of the accident." For the majority, the focus is on the Industrial Commission certifying compliance.

{¶ 40} An employer is not entitled, however, to absolute immunity; for example, an employer is not immune to sexual-harassment complaints. *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486, 575 N.E.2d 428. Explaining *Kerans*, the Supreme Court of Ohio stated that "victims of sexual harassment had a common-law remedy. Thus this court held that a purely psychological injury suffered in the workplace is compensable in the common law." *Bunger v. Lawson Co.* (1998), 82 Ohio St.3d 463, 465, 696 N.E.2d 1029. In *Bunger*, the lower courts had concluded that an employee could not receive workers' compensation benefits because her psychological condition did not result from a physical injury. The lower courts further determined that the employee could not maintain a negligence action against her employer because her condition arose during the course and scope of her employment with a complying employer. The

---

2. The statute granting immunity actually says "received or contracted by any employee in the course of or arising out of his employment." R.C. 4123.74.

3. Nor did the common pleas court address this point.

Supreme Court reversed, however, explaining that because her psychological injuries were not included within the statutory definition of "injury," the employer was not immune to liability for such injuries under R.C. 4123.74. Thus, the court held that the employer could seek redress under the common law. Therefore, there are exceptions to employer immunity even when the employer is fully compliant.[4]

{¶ 41} Besides the statutory exceptions to employer immunity, the language of R.C. 4123.74 qualifies the immunity that the complying employer is entitled to: the immunity extends to injuries "received or contracted by any employee in the course of or arising out of his employment."

{¶ 42} In support of its conclusion that defendant is entitled to statutory immunity because it is a complying employer, the majority cites *Bridges v. Natl. Eng. & Contracting Co.*, 49 Ohio St.3d 108, 551 N.E.2d 163. *Bridges*, however, qualified that the defendant was a "complying employer entitled to the immunity *provided in R.C. 4123.74.*" (Emphasis added.) *Bridges* never explained this qualification, however, because the issue in *Bridges* was whether an employer is complying if it does not list the employee on the payroll that provides the basis for paying premiums. The Ohio Supreme Court reaffirmed that "standing alone, the failure of an employer who has otherwise complied to include one or more employees on a payroll report 'is not an omission which will deprive an employer of immunity.'" *Bridges*, 49 Ohio St.3d at 116, 551 N.E.2d 163, quoting *Perry v. S.S. Steel Processing Corp.* (1987), 40 Ohio App.3d 198, 200, 532 N.E.2d 783, 785. Such an omission is not the issue in the case at bar. And *Bridges* should not be extended beyond that question, especially because the case specifically qualified the immunity as that "provided in R.C. 4123.74."

{¶ 43} The majority also cites *Fuhrman v. Garrison Feist Constr. Co.*, Hamilton App. Nos. C–000063 and C–000080, 2000 WL 1838031. The central issue in *Fuhrman* also was whether the employer was in compliance. After the worker's claim was allowed, the employer appealed to a district hearing officer of the commission and claimed that the worker was an independent contractor. In a pending tort action, the employer alleged immunity and supported its claim with an affidavit from a Bureau of Workers' Compensation employee who stated that its records indicated that the employer was a complying employer. In response, the worker added an intentional-tort claim and reported that an audit showed that the employer had failed to pay any workers' compensation premiums on this worker's behalf. The trial court implicitly concluded that the worker was an employee and determined that the employer was complying. On that basis, the

---

4. For a more subtle discussion of immunity, see Wasil, Mastrangelo, and DeRose, Ohio Workers' Compensation Law (2004).

lower court held that the employer was immune to the worker's claims, except for the claim in intentional tort, which the court rejected on different grounds.

{¶ 44} The issue before the appellate court in *Fuhrman* was whether the trial court properly determined that the worker was not an independent contractor and whether the employer was complying. The court held that "an employer's failure to include a particular injured employee in a required payroll report does not deprive the employer of its statutory immunity from a civil action brought by the employee in the absence of a final determination by the commission that the employer is a noncomplying employer who has not settled its liability to the State Insurance Fund." The issue in *Fuhrman* was whether the court could conclude that the employer is immune when the employee fails to produce sufficient evidence to rebut the employer's proof of compliance. The case cannot be extended beyond that principle. Compliance is not at issue in the case at bar. Thus, *Fuhrman* is not helpful.

{¶ 45} The majority opinion also cites *Catalano v. City of Lorain*, 161 Ohio App.3d 841, 2005-Ohio-3298, 832 N.E.2d 134. In *Catalano*, the employee was specifically held to be acting within the scope of his employment when he was injured and received workers' compensation benefits for his injuries. He then additionally sued his employer for negligence in failing to provide a safe working environment. In the case at bar, however, the employee was initially denied workers' compensation benefits. Thus, *Catalano* does not help to clarify the particular immunity invoked from the facts in the case at bar.

{¶ 46} The majority cites the case of *Kaplan v. Mayfield*, Jefferson App. No. 86–J–25, 1987 WL 14030, to demonstrate that "not all injuries having an association with the workplace are compensable." This principle is true. However, this principle does not apply for the same reasons here. In *Kaplan*, the employee argued that his angina was caused by his employment. The court denied that his workers' compensation claim was compensable, because his expert testified only that the employee was suffering from a progressive coronary disease, not that his employment caused his angina. The appellate court explained: "[I]t was essential that he prove not that the angina episode was an injury but rather * * * that his conditions of employment aggravated a preexisting condition resulting in an injury necessitating medical care." The court further observed that the angina episode left no permanent damage of any kind and that his electrocardiogram was essentially normal.

{¶ 47} In the case at bar, however, the employee's doctor stated in an affidavit that the employee's "hypoglycemia, and therefore the seizure, was a direct result of the strenuous physical work activity Mr. Maynard was performing in a relatively warm environment." This expert further stated that as a result of this seizure, Maynard suffered a fracture when he fell from the truck onto the

pavement. The doctor in the case at bar clearly met the requirements articulated, but not met, in the *Kaplan* case.

{¶ 48} Again, I return to my fundamental disagreement with the majority opinion: its failure to explain precisely whether the injury "was received or contracted by the employee in the course of or arising out of his employment." R.C. 4123.74.[5]

{¶ 49} As to whether the employee was in the course of his employment, the record shows that the employee suffered a seizure while sitting in a company truck. He was in that truck because having just left one task for his employer, he was en route to another task assigned by his supervisor. It was his supervisor who decided to stop and eat lunch, an event that the employee did not participate in. The record shows, moreover, that he was on the clock.

{¶ 50} Second, as to a causal connection between his injury and his employment, the record shows that a doctor's affidavit stated that the employee's "hypoglycemia, and therefore the seizure, was a direct result of the strenuous physical work activity Mr. Maynard was performing in a relatively warm environment." This expert further stated that as a result of this seizure, Maynard suffered a fracture when he fell from the truck onto the pavement. And he fell from the truck as a result of a coemployee opening the truck door.

{¶ 51} We should address this evidence. I would hold that the record before this court demonstrates sufficient evidence to grant a motion for summary judgment for the employer's immunity *based on the employee's injury being received and contracted by the employee in the course of and arising out of his employment.*

B. Intentional–Tort Claim

{¶ 52} As to the intentional-tort claim, I agree that there is not a sufficient basis to allow this issue to go to a jury. However, I would add that ignoring the explicit instruction in the company manual to call for emergency help immediately upon observing a worker with altered consciousness is significant. It compromises any of the foreman's actions that might be imputed to the employer.

{¶ 53} For the above reasons, I concur in judgment only.

---

**5.** I also note that similar findings would have been necessary in the workers' compensation claim and, thus, the workers' compensation appeal should have been consolidated with the case at bar to ensure that no contradictory findings occurred.